New Jersey Department of Labor,
Workmen's Compensation Bureau.

BERTHA MICIELI, WIDOW, JOSEPH MICIELI, DECEASED, PETITIONER, v. ERIE RAILROAD CO., RESPONDENT.

Decided June 29, 1940.

For the petitioner, *Nathan Rabinowitz* and *Koch & Simon*.

For the respondent, *Hobart, Minard & Cooper*.

The above matter having been submitted to me on a stipulation of facts and briefs, I hereby find and determine as follows:

On January 6th, 1938, and for some time prior thereto, Joseph Micieli was employed by the respondent at its terminal, Jersey City, New Jersey.

Decedent was employed as baggage porter at said terminal. His hours of duty were from ten p. m. to seven a. m.

His rate of pay was fifty cents per hour, eight hours per day, and he worked six days per week, making his weekly wage $24.

As baggage porter, decedent's duties were to handle United States mail that came from New York, take it from the baggage room to outgoing trains at said terminal, load it on the trains. The mail in question was contained in sacks and destined for points within and without the State of New Jersey. Decedent also had to handle bundles of newspapers moving en route from New York to points within and without the State of New Jersey. Upon receipt of these papers from New York, the decedent would take them and load them on the various trains. The trains in question were all destined for points out of the state, and the papers, as previously stated, were destined to points within and without the State of New Jersey. Decedent also had to meet incoming trains, take the mail and baggage therefrom, bring it to the baggage room, and there sort it out and route it to its various destinations. Mail and baggage coming from points within and without the State of New Jersey and being destined to points within and without the state.

Decedent did the foregoing work at said terminal on January 6th, 1938, and every night or day prior thereto on which he worked. He had been doing that work for two years.

On January 6th, 1938, he completed his work at seven o'clock A. M. At seven-thirty-three A. M. on said day, decedent attempted to alight from a train moving into Paterson station of the Erie Railroad Company, it being estimated that at said time the train was moving about fifteen miles per hour. Decedent was seen to jump off train, run along platform while holding on to grab handle, lose his footing and fall and roll under the train. Injuries fatal.

Decedent had in his possession a pass, the reading thereon being as follows:

(Front)

### ERIE RAILROAD COMPANY

New York, Susquehanna and Western Railroad Co.

The New Jersey & New York Railroad Co., Eastern District.

Not good on Trains 1 and 2 except between Hornell and Buffalo, N. Y.

1937-1938                                    64846-D

PASS    Mr. Joseph Micielli

ACCOUNT Extra Baggage Porter (ALK)

Between Stns. Jersey City, N. J., and Paterson, N. J.

Until December 31, 1938.

Valid when countersigned by

A. E. Hoffman.        Unless otherwise ordered and subject
Countersigned          to conditions on back.

A. E. HOFFMAN.                      W. M. WHITE

                                    General Manager.

(Reverse Side)

### CONDITIONS

A person accepting and using this free pass thereby assumes all risk of accidents, death, personal injury and loss of and damages to property whether caused by negligence of any railroad company named on the other side or negligence of any officer, agent or employe thereof, or otherwise.

As a condition precedent to the issuing and use of this pass, each recipient represents that he or she is not prohibited by law from receiving such free transportation, and agrees that this pass will not be used in violation of any law and agrees that this pass is given gratuitously and furnishes no part of consideration for services, and that none of said railroad companies shall be considered as a common carrier as to the transportation furnished thereon.

This pass is not transferable, and if presented by any other than an individual named thereon the conductor will take up pass and collect fare. This free pass is accepted and used upon the above conditions.

(Signed)   JOSEPH MICIELLI

This pass will not be honored unless signed in ink or indelible pencil by the person or persons to whom issued.

Decedent's work was confined entirely to Jersey City, New Jersey; his wages were fixed by hours; and his salary for the work done was the same as that of a person living in Port Jervis, New York, or in Jersey City, New Jersey.

Decedent's sole dependent was his wife, the petitioner, Bertha Micielli, to whom he had been married about three years, and with whom he was living at 2 North Fourth Street, in Paterson, New Jersey, at the time of the fatal accident.

The conditions of the pass provided that the railroad company shall not be considered as a common carrier as to the transportation furnished thereon and that recipient thereof assumes all risks of accidents whether caused by negligence or otherwise. By reason of these express terms of the pass, the employe is deprived of the benefits of the act commonly known as the Federal Employers Liability act (*U. S. Code tit.* 45, § 51), the same being limited in its operation to "common carrier by railroad" and actions thereunder being limited to claims arising out of negligence.

In furnishing the pass to deceased respondent was providing him with transportation from the place of his residence to the place of work, using the facilities furnished by the company, which arrangement was useful to the company, and while it was a matter of convenience to deceased to use the pass, it was also beneficial to respondent in the sense that it would facilitate the transportation of deceased to and from his work.

The stipulation of facts discloses that deceased, while actually on the premises of the employer, was engaged in work of both interstate and intrastate character, but the interstate relation ceased when he left the premises and was en route to his home making use of the pass, but the employment was not yet at an end. At the time of his death, he was acting under the terms of his general employment, exercising a privilege incidental to that employment.

The general employment continues while a man is going to and from his employment where the means of transporta-

tion are customarily furnished by the employer or where the employer has customarily furnished the employe with a pass to be used in going to and from his work and the practice is beneficial to both the employer and the employe. *Lehigh Navigating Coal Co.* v. *McGonnell*, 120 *N. J. L.* 428; 199 *Atl. Rep.* 906; *affirmed,* 121 *N. J. L.* 583; 3 *Atl. Rep.* (*2d*) 581; *Rubeo* v. *Arthur McMullen Co.,* 117 *N. J. L.* 574; 189 *Atl. Rep.* 662.

I find, therefore, that deceased, at the time of the accident, was not engaged in interstate commerce, that the relationship of employer and employe was in existence at that time, and that the accident causing his death arose out of and in the course of his employment.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

It is, therefore, \* \* \* ordered that judgment final be entered in favor of the petitioner and against the respondent.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

JOHN J. STAHL,
*Deputy Commissioner.*